# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT § | | |
| OPPORTUNITY COMMISSION § | | |
| § | | |
| v. § | A-11-CA-827 LY | |
| § | | |
| TEXAS DEPARTMENT OF § | | |
| AGRICULTURE AND § | | |
| GENERAL LAND OFFICE § | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Texas Department of Agriculture's First Amended Motion to Dismiss (Clerk's Doc. No. 20), Plaintiff Equal Employment Opportunity Commission's Response (Clerk's Doc. No. 21), and the General Land Office's Motion to Dismiss (Doc. No. 31), all of which have been referred to the undersigned for a report and recommendation. The Court held a hearing on the above motions on April 5, 2012. At the hearing, the parties agreed to convert the Motions to Dismiss to Motions for Summary Judgment and to submit additional arguments and evidence. In accordance with that schedule, the parties filed five additional briefs, the last of which was filed on May 17, 2012.[1] The matter is now ripe for a decision.

---

[1] The GLO filed its Supplemental Motion to Dismiss and Motion for Summary Judgment (Clerk's Doc. No. 35) on April 20, 2012; the Texas Department of Agriculture filed its Response in Opposition to Co-Defendant Texas General Land Office's Supplemental Motion to Dismiss and Motion for Summary Judgment (Clerk's Doc. No. 37) on May 8, 2012; Plaintiff EEOC filed its Response (Clerk's Doc. No. 38) on May 8, 2012; the GLO filed a Reply (Clerk's Doc. No. 39) on May 15, 2012; and the EEOC filed a Reply (Clerk's Doc. No. 41) on May 17, 2012.

## I.  FACTUAL BACKGROUND[2]

This is an Equal Pay Act case asserted by the Equal Opportunity Employment Commission ("EEOC" or "Plaintiff") against the Texas Department of Agriculture ("TDA")[3] and the Texas General Land Office ("GLO") pertaining to a single former employee of the Texas Department of Rural Affairs ("TDRA"), Monica Bosquez.  Suit was originally filed against the TDRA, and the TDA was substituted by the Court as the proper Defendant.  The Plaintiff filed an Amended Complaint on February 6, 2012 (Clerk's Doc. No. 17) adding the GLO as a Defendant.  However, all factual complaints are against the predecessor agency the TDRA.

The EEOC asserts that the TDRA paid Ms. Bosquez[4] lower wages "than it paid to Chance Sparks, a comparable male employee, in the same division, for substantially equal work, the performance of which required equal skill, effort, and responsibility, and which were performed under similar working conditions" in violation of Section 16(c) and 17 of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 216(c) and 217, and the Equal Pay Act ("EPA"), 29 U.S.C. §§ 206(d)(1) and 215(a)(2).  First Amended Compl. ¶ 8.  The EEOC seeks back wages and liquidated damages for Ms. Bosquez, as well as injunctive relief against the TDRA and GLO to enjoin allegedly discriminatory compensation practices and to order the TDRA and GLO "to institute and carry out

---

[2]The facts set out here are taken from Plaintiff's First Amended Complaint, as the Court must accept the Plaintiff's allegations as true in reviewing the motion to dismiss.

[3]By Order of the District Court dated November 14, 2011, the Texas Department of Agriculture has been substituted for Defendant the Texas Department of Rural Affairs ("TDRA"). *See* Docket No. 13.

[4]Bosquez terminated her employment with the TDRA on February 27, 2011.  At that time she was hired by the Texas Department of Housing and Community Affairs.  Pursuant to the Governor's designation, she was transferred by the Texas Department of Housing and Community Affairs to the GLO, and is currently employed at the GLO.  Affidavit of Drew Deberry, Exhibit A to the TDA's Response (Clerk's Doc. No. 37).

policies, procedures, and programs" regarding equal employment opportunities for women. The Defendant Texas Department of Agriculture originally moved to dismiss largely on the basis that the TDRA ceased existence on October 1, 2011, and claims that the GLO is the only proper defendant. The GLO moves for summary judgment as to the claims against it, arguing that Bosquez did not work for the GLO during the relevant period and that the GLO entered into a Memorandum of Understanding ("MOU") with the TDRA that limited the GLO's liability and placed any liability for employment disputes arising during employment with the TDRA squarely with the TDA. Thus, the GLO maintains that the TDA is the only appropriate defendant in this cause of action and the TDA asserts that the GLO is the only proper defendant. The EEOC asserts that both the TDA and the GLO should remain as defendants to the litigation.

Pursuant to Senate Bill 1 of the 82nd Texas Legislature, ("Senate Bill 1") the TDRA ceased to exist as a separate state agency as of October 1, 2011. A portion of its operations were reorganized as the Office of Rural Affairs within the Texas Department of Agriculture. Senate Bill 1 has various provisions that the parties assert are relevant to this dispute:

> **Section 62.12(a).** The Texas Department of Rural Affairs is abolished as an independent agency and transferred as a program to the Office of Rural Affairs in the Department of Agriculture.
>
> **Section 62.12(c).** All rules, policies, procedures, and decisions of the Texas Department of Rural Affairs are continued in effect as rules, policies, procedures and decisions of the Office of Rural Affairs in the Department of Agriculture….
>
> **Section 62.13(a).** On October 1, 2011:
>
> * * *
>
> > (2) an employee of the Texas Department of Rural Affairs becomes an employee of the Office of Rural Affairs in the Department of Agriculture;

>   (3)  a reference in law to the Texas Department of Rural Affairs means the Office of Rural Affairs in the Department of Agriculture;
>
>   (4)  all money, contracts, leases, rights, and obligations of the Texas Department of Rural Affairs are transferred to the Office of Rural Affairs in the Department of Agriculture.
>
> **Section 62.13(b).**  A function or activity performed by the Texas Department of Rural Affairs is transferred to the Office of Rural Affairs in the Department of Agriculture as provided by this article.

Senate Bill 1, § 62.12 *et seq.* Important to the issues now before the Court, Senate Bill 1 further provides that:

>   **Section 62.15.**  Notwithstanding any other provision of this article, the governor retains the authority to designate an agency to administer federal disaster recovery funds and to transfer the federal funds to any state agency.  On the date the governor designates a state agency, other than the Texas Department of Rural Affairs…
>
>   (1) a reference in law to the Texas Department of Rural Affairs related to the disaster recovery funds means the agency designated by the governor to administer the disaster recovery funds;
>
>   (2) all money, contracts, leases, rights, and obligations of the Texas Department of Rural Affairs related to the disaster recovery funds are transferred to the designated agency….

*Id.*, § 62.15.

On June 17, 2011, as allowed in Senate Bill 1, Texas Governor Rick Perry designated the General Land Office to administer the federal disaster recovery funds formerly administered by the TDRA, effective July 1, 2011.  At this time, he also transferred federal disaster funds then being administered by the Texas Department of Housing and Community Affairs to the GLO.  In a letter to the Secretary of Housing and Urban Development, the Governor stated "to ensure that GLO has the institutional knowledge and subject matter expertise, it has committed to hiring disaster recovery staff from the Texas Department of Housing and Community Affairs (TDHCA) and the Texas

Department of Rural Affairs (TDRA) so those familiar with the program operations will continue at GLO." Exhibit 1 to TDA's First Motion to Dismiss (Clerk's Doc. No. 6).

Following its designation, the GLO hired some, but not all of the employees previously employed by the TDRA and TDHCA with experience administering the federal funds – including Monica Bosquez. To formalize the hiring of employees, the GLO entered into two separate yet materially identical memoranda of understanding, ("MOU's") one with the TDRA and one with the TDHCA. In material part, the MOU's provide:

> 7. Human Resources—The response, defense, investigation, and resolution of any and all legal filings, claims, and/or complaints related to the transferred employees' employment with TDRA [or TDHCA] will remain the responsibility of TDRA [or TDHCA] both during the period between the effective date of this MOU and the date of transfer, and after the date of transfer to the extent the underlying facts relate to the period when they were TDRA [or TDHCA] employees.

Memoranda of Understanding, Exhibits A-1 and A-2 to Defendant GLO's Supplemental Motion to Dismiss and Motion for Summary Judgment (Clerk's Doc. No. 35).

## II. RELEVANT STANDARDS

### A.   Motion to Dismiss

Defendants move to dismiss based upon Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief. A motion under Rule 12(b)(1) should be granted only if it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). The Court may find a plausible set of facts by considering: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane*, 529 F.3d at 557 (quoting

*Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in the light most favorable to Plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In 2009, the Supreme Court expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### B.    Motion for Summary Judgment

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. That burden is not discharged by "mere allegations or denials." FED.R.CIV.P. 56(E). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ." *Celotex Corp.*, 477 U.S. at 322.

### III.    ANALYSIS

#### A.    TDA's Motion to Dismiss

##### 1.    *The TDRA was abolished by Senate Bill 1*

Defendant TDA asserts that it cannot be held liable for violations of the Equal Pay Act because it was not Bosquez's employer and did not assume employment liability upon the dissolution of the TDRA. TDA argues that, although Senate Bill 1 abolished the TDRA and transferred it "as a program to the Office of Rural Affairs in the Department of Agriculture," Senate Bill 1 mandated that "all money, contracts, leases, rights, and obligations of the Texas Department of Rural Affairs related to the disaster recovery funds are transferred to the designated agency." *Id.* The General Land Office is that designated agency. *See* Exhibit 1 to Motion.

Plaintiff EEOC responds that the doctrine of successor liability applies in this case. Employment law liability may be imposed on an entity that is not directly responsible for a violation of the statute and has not contractually assumed liability when the conditions for successor liability are otherwise met. *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 750 (5th Cir. 1996). The policy underlying the successor liability doctrine is to protect an employee when the ownership of her employer suddenly changes. *Id.* There are nine factors—the first two of which are "critical"—in determining such liability. *Id.* (adopting factors adopted in *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974)). These factors are:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Id.* In this case, both defendants and Bosquez's employer are Texas state agencies. The Court can find no case in which the doctrine of successor liability is applied in the context of the dissolution of a state agency or involving a state agency in general. However, it seems improbable that a state agency can avoid liability through legislative dissolution, which seems more akin to a reorganization than a corporate merger or sale.

Moreover, when all is said and done, if the Plaintiff prevails in this case the party paying a judgment will be the State of Texas, regardless of which agency is the proper defendant. The entire question of which agency should be held responsible for any liability here thus boils down to a bureaucratic dispute over which of these two agencies' budget will be tapped to pay a judgment. That is not a dispute that concerns the Court. What does concern the Court is the amount of

8

money—all of it hard-earned by Texas taxpayers—these two agencies have spent fighting over this issue.  As the Court warned the parties at the hearing held on March 22, 2012, if neither the TDA nor the GLO stepped forward and accepted responsibility for any judgment in this case, the Court would recommend that both agencies stay in the case—and that is the Court's recommendation.

### 2. *EEOC's standing to seek injunctive relief*

Defendant TDA argues that the EEOC has failed to allege the necessary threat of immediate harm required to establish Article III standing to seek injunctive relief against the TDA.  Plaintiff EEOC responds that it is serving the public interest and as such even if Bosquez is not subject to any immediate threat of further injury, the EEOC sues for injunctive relief in order to protect other women from present and future discrimination by the same decision makers who harmed Bosquez.  The EEOC has pled its claims in part pursuant to Section 16(c) and 17 of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 216(c) and 217, as well as the Equal Pay Act.  The EEOC is charged in 29 U.S.C. § 214 with the enforcement of the Equal Pay Act, 29 U.S.C. § 206(d), and may bring litigation on behalf of an employee or employees who have a claim under the Act.  Such "public actions" are authorized under two sections of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. §§ 201 to 219, of which the Equal Pay Act is part and which governs its enforcement.  Section 17 of the FLSA authorizes the EEOC to sue on behalf of an employee for injunctive relief.  29 U.S.C.A. § 217.

The Fifth Circuit has held that a plaintiff seeking injunctive relief must "allege a likelihood of future violations of their rights by [the defendant], not simply future effects of past violations " thereby requiring a plaintiff to satisfy the same constitutional requirements as any claimant for equitable relief in a federal court.  *Armstrong v. Turner Industries, Inc.*, 141 F.3d 554 (5th Cir. 1998), (quoting *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*,

28 F.3d 1268 (D.C. Cir. 1994); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that in order to establish Article III standing, a plaintiff seeking injunctive relief must show he has sustained or will sustain some direct injury as result of violation). In order to get a prospective injunction pursuant to Section 17, the EEOC must allege that the employer has employees covered by the law, that it is in violation of the law with respect to these employees, and that without an injunction the violations are likely to continue. *See EEOC. v. Home of Economy, Inc.*, 539 F. Supp. 507 (D. N.D. 1982), rev'd on other grounds, 712 F.2d 356, (8th Cir. 1983).

In this case, in its Statement of Claims, the Plaintiff EEOC has not specifically alleged that the violations of the Equal Pay Act are likely to continue. However, the EEOC does allege that the TDA and the GLO are presently engaged in unlawful employment practices. Moreover, the EEOC argues that in making its claims and requesting injunctive relief, it acts to vindicate the public interest in preventing discrimination, and protect the interests of other women now employed or employed by the Defendant in the future. *See* Response at p. 9. Therefore, the Court finds that Defendant TDA's and GLO's alleged employment practices plausibly apply to women other than Bosquez who are employed at the current iteration of the former Texas Department of Rural Affairs—whether this is the TDA , the GLO, or both. The EEOC represents the public interest and not simply the interests of Bosquez. While poorly pled, using the standard that motions to dismiss should be rarely granted, and finding Plaintiff's assertion that it seeks injunctive relief using its public interest enforcement powers to protect other women from pay discrimination plausible under *Iqbal*, the Court declines to dismiss the EEOC's claims for injunctive relief at this juncture.

    3.  *Whether the EEOC's claim for injunctive relief is moot*

Lastly, Defendant TDA asserts that the EEOC's claim for injunctive relief is moot as the agency was dissolved in 2011 and its functions were transferred to other state agencies. Defendant

TDA argues that Plaintiff's claim for injunctive relief against the Texas Department of Rural Affairs is rendered moot because the TDRA no longer has employees and there is no possibility of future harm. Plaintiff EEOC responds that, as quoted earlier, "all money, contracts, leases, rights, and obligations of the Texas Department of Rural Affairs are transferred to the Office of Rural Affairs in the Department of Agriculture."[5] Plaintiff argues that it should be given a chance, through discovery, to determine if the same decision makers who allegedly discriminated against Bosquez and others were transferred to the Department of Agriculture where the harm could continue. Thus, the EEOC contends that its request for ultimate injunctive relief is not moot.

The parties agree that "[t]he test of mootness in a case asking for injunctive relief is whether the injury is continuing or is likely to be repeated." *Sw. Bell Tele. Co. v. Comm. Workers of Am., AFL-CIO*, 454 F.2d 1333, 1334 (5th Cir. 1971). In this case, the District Court has substituted successor agencies Texas Department of Agriculture and the General Land Office for the TDRA. Because the EEOC acts as a representative for the public interest and for other TDRA, Texas Department of Agriculture, or General Land Office employees who might be subject to similar discrimination pursuant to the Equal Pay Act, the Court finds that the EEOC's request for injunctive relief should not be dismissed as moot.

B.   **The GLO's Motion to Dismiss**

The GLO filed a Motion to Dismiss (Clerk's Doc. No. 31) on March 30, 2012, which it supplemented on April 20, 2012 (Clerk's Doc. No. 35). In its original Motion to Dismiss, the GLO argued that the EEOC's claims against it should be dismissed because the GLO was not Bosquez's

---

[5] Section 62.15 of Senate Bill 1 applies similar language to the GLO. "All money, contracts, leases, rights, and obligations of the Texas Department of Rural Affairs related to the disaster recovery funds are designated to the designated agency." *Id.*

employer during the relevant time period. It also adopted the TDA's arguments that the EEOC does not have standing to bring claims for injunctive relief and that these claims are moot. These arguments should be denied for the same reasons set forth above concerning the TDA's Motion to Dismiss.

While the GLO may not have been Bosquez's employer during the relevant time period, the TDRA's administration of federal disaster recovery funds was at least in part assumed by the GLO, along with those monies, and Bosquez was paid out of those monies while at the TDRA. While it is arguable whether or not successor liability applies to the GLO, the Court finds that it would be inappropriate to dismiss the GLO at this juncture. Section 62.15 of Senate Bill 1 does transfer all obligations of the Texas Department of Rural Affairs "related to the disaster recovery funds" to the agency designated by the Governor – the GLO.

### C.    The GLO's Motion for Summary Judgment

The GLO has also moved for summary judgment arguing that: (1) Senate Bill 1 does not transfer liability for TDRA employment practices to the GLO; (2) the GLO entered into a Memorandum of Understanding explicitly eschewing liability for former employees of the TDRA.

#### 1.    *The effect of Senate Bill 1*

The GLO asserts that nothing in Senate Bill 1 transfers liability to the TDRA's employment decisions to the GLO. It points out that the explicit language of Senate Bill 1 transfers the TDRA as a "program" to the TDA, transfers all TDRA employees to the TDA, legislates that all "policies" and "decisions" of the TDRA become those of the TDA, legislates that all references to the TDRA become a reference to the TDA, and transfers all "functions" of the TDRA to the TDA. The GLO argues that the only exception to the wholesale transfer of the TDRA to the TDA is the portion of Senate Bill 1 that allows the Governor to "to designate an agency to administer federal disaster

12

recovery funds." GLO argues that TDA's reliance on the language in Section 62.15 of Senate Bill 1, stating that "all money, contracts, leases, rights, and obligations of the Texas Department of Rural Affairs related to the disaster recovery funds are transferred to the designated agency" transfers liability for discriminatory wage or employment practices along with the funds in issue, is in error. GLO argues that discriminatory acts are not "obligations" "related to" the disaster recovery funds and that the Legislature did not intend to transfer liability for employment discrimination cases to the GLO along with the funds.

The GLO points out that Senate Bill 1 did not transfer the TDRA's employees to the GLO, but rather transferred them to the TDA, and that the "policies" and "decisions" of the TDRA were specifically denoted as becoming "policies" and "decisions" of the TDA. The GLO asserts that of the two agencies, the TDA is better served to suit the function of defending this suit. The Court notes that Senate Bill 1 uses practically identical language to assign the obligations of the TDRA to the TDA and to assign the obligations of the TDRA "related to the disaster recovery funds" to the GLO as the "designated agency." Compare the language making the TDRA part of the TDA to that designating "an agency" to takeover administration of the disaster recovery funds:

> **Section 62.13(a).** On October 1, 2011:
>
>> (3) a reference in law to the Texas Department of Rural Affairs means the Office of Rural Affairs in the Department of Agriculture;
>>
>> (4) all money, contracts, leases, rights, and obligations of the Texas Department of Rural Affairs are transferred to the Office of Rural Affairs in the Department of Agriculture.
>
> **Section 62.15.** Notwithstanding any other provision of this article, the governor retains the authority to designate an agency to administer federal disaster recovery funds and to transfer the federal funds to any state agency. On the date the governor designates a state agency, other than the Texas Department of Rural Affairs…

> (1) a reference in law to the Texas Department of Rural Affairs related to the disaster recovery funds means the agency designated by the governor to administer the disaster recovery funds;
>
> (2) all money, contracts, leases, rights, and obligations of the Texas Department of Rural Affairs related to the disaster recovery funds are transferred to the designated agency….

Senate Bill 1, § 62.15.  So despite the fact that the "policies" and "decisions" of the TDRA were transferred to the TDA, Senate Bill 1 specifically carved out the "designated agency" as the owner of the "obligations" of the TDRA.  While the GLO may argue that the Legislature did not intend to include employment liability as an "obligation" of the "designated agency" it offers no evidence to support this argument, and that conclusion is not obvious from the statutory language.  In fact, based on this language, Senate Bill 1 in essence declares that **both** the TDA and the GLO are the successors "in law" to the TDRA.  As both appear to succeed the TDRA in some capacity, both are potentially liable.

As a purely factual matter, which is relevant to injunctive relief, the TDA represents that it did not in fact ever employ any of the TDRA's former Disaster Recovery Division employees, receive any funding for, or employ any administrator involved in setting, Bosquez's salary as alleged by the EEOC.  Charles Stone, the former TDRA Executive Director, who is alleged by the EEOC to have been involved in setting Bosquez's salary at the Disaster Recovery Division, was never employed by the TDA.  Affidavit of Drew Deberry, Exhibit A to the TDA's Response (Clerk's Doc. No. 37). Six former TDRA Disaster Recovery Division employees, including Bosquez, were eventually employed by the GLO.  *Id.*  Thus, to the extent that injunctive relief is warranted, the TDA represents that the GLO is a proper party to the litigation.  The Court concurs with this

reasoning and finds this as an additional basis for not issuing a recommendation that the district court grant summary judgment in favor of the GLO.

### 2. *The GLO's Memoranda of Understanding with the TDRA and TDHCA*

The GLO next argues that the Memorandum of Understanding it entered into with the TDRA and the identical Memorandum of Understanding it entered into with the TDHCA, curtail any liability for discriminatory employment practices carried out at those agencies. The MOU reads as follows:

> 7. Human Resources – The response, defense, investigation, and resolution of any and all legal filings, claims, and/or complaints related to the transferred employees' employment with TDRA [or TDHCA] will remain the responsibility of TDRA [or TDHCA] both during the period between the effective date of this MOU and the date of transfer, and after the date of transfer to the extent the underlying facts relate to the period when they were TDRA [or TDHCA] employees. TDHCA agrees to share information relating to any such legal filings, claims and/or complaints with the GLO and to fully cooperate with the GLO in the event that the GLO's participation is required in the response, defense, investigation or resolution of such filings, claims and/or complaints. TDRA agrees to provide to the GLO in their entirety the personnel files of transferred employees, and the GLO and the TDRA agree that the release of such information to the GLO is an intergovernmental transfer and not a release to the public for purposes of the Texas Public Information Act.

Exhibit A-1 to the GLO's Supplemental Motion to Dismiss and Motion for Summary Judgment (Clerk's Doc. No. 35). The GLO argues that because the TDRA entered into this agreement, Senate Bill 1 makes the TDA bound by the MOU, as the TDA essentially steps into the TDRA's shoes for liability purposes. In response, the TDA asserts that the MOU between the GLO and TDRA is an improper attempt to re-write Senate Bill 1and it is in no way bound by the TDRA's MOU. The EEOC chimes in that the MOU actually requires the GLO to participate in the response, defense investigation, or resolution of the EEOC's complaints.

While at first blush the GLO's argument seems tenable, upon closer inspection it is a red herring. *First*, the Court is unclear how an agreement between two state agencies, as to a particular

15

agency's individual liability, affects which agency may be named by the EEOC in a lawsuit. While parties to lawsuits often engage in contracts or agreements indemnifying each other, that only determines who ultimately pays a judgment, not who is the proper defendant. *Second*, it is not clear at this juncture that the MOU is even an enforceable contract that must be recognized by the Court. The Court may not assume it is in determining who is a proper party to this litigation. *Third*, Senate Bill 1 uses almost identical language to assign the TDRA's obligations to the TDA as it does to assign obligations to the agency "designated" to take over disaster recovery funds. So the GLO's statutory obligations under Senate Bill 1 are worded identically to those of the TDA. The real question is under which of the two competing provisions is this issue settled—is the potential liability in this case an "obligation[ ] of the Texas Department of Rural Affairs" (which SB 1 sent to the TDA), or is it an "obligation[ ]of the Texas Department of Rural Affairs related to the disaster recovery funds" (which SB 1 sent to the GLO)? *Fourth,* once it became the "designated agency," the GLO entered into an alleged contract with its lame duck predecessor purporting to absolve it of employment litigation liability. While this would be clever lawyering in a corporate context, in the public sector, such an agreement rings hollow. Taken to its logical conclusion, through these MOUs the State of Texas entered into a contract with itself. It is unclear how such an agreement can change who the proper defendant in this case is. Additionally, the TDA disputes that it is even bound by the MOUs, as it was not a party to either of them. *And fifth*, the reality of the situation is that Bosquez, along with many employees and supervisors from her division at the TDRA, are now doing the very same disaster relief work at the GLO that they had been doing at the TDRA. Indeed, according to the TDA, no TDRA employees from the disaster recovery division came to work at the TDA. Affidavit of Drew Deberry, Exhibit A to the TDA's Response (Clerk's Doc. No. 37). All disaster

recovery personnel who did remain employed were transferred to the GLO. Thus, from a practical standpoint, it seems reasonable that the GLO remain a party to the suit.

Finally, the Court continues to be befuddled by the intractability of these two state agencies to choose which of them will defend this suit. While the Court understands that Texans in general, and our state agencies in particular, live in times of budgetary restrictions, and that each agency must scrap for its respective piece of the proverbial pie, ultimately the taxpayers are bearing the burden of litigating this cause of action, and of paying a judgment should the Plaintiff prevail. Infighting between agencies over which is to bear the cost only serves to increase the cost of the litigation, all at the expense of the taxpayers, state and federal.

### III.  RECOMMENDATION

The Court therefore **RECOMMENDS** that the District Judge **DENY** Defendant Texas Department of Agriculture's First Amended Motion to Dismiss (Clerk's Doc. No. 20), **DENY** the General Land Office's Motion to Dismiss (Doc. No. 31) and **DENY** the General Land Office's Supplemental Motion to Dismiss and Motion for Summary Judgment (Clerk's Doc. No. 35).

### IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 10th day of July, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE